JiDOUCET, Chief Judge.
The defendant, Jerry Lee Hampton was convicted of second degree murder. He appeals the conviction and the sentence imposed in connection therewith.
On August 20, 1982, the defendant fought with Billy King at the Chicken Shack (or Sugar Shack) Cafe in Alexandria, Louisiana. After the fight, the defendant went to the “Sonia Quarters” area, where he was joined by Gerald Carr, John Hampton and another man. Near midnight, they returned to the Chicken Shack Cafe. The defendant fired two or three shots, killing James King, Billy King’s brother.
After the shooting, Hampton turned himself in to the police. At the police station, he made an exculpatory statement to Joyce Holmes, who witnessed the shooting and the earlier fight. The defendant also made a statement to police. That statement was not introduced at trial. Several weeks after his arrest, while in the parish jail, Jerry Hampton made another statement to a police detective. At trial, the Estate introduced part of that statement on rebuttal. Pursuant to a defense motion, the entire statement was played for the jury.
On November 19, 1982, the defendant was indicted for second degree murder, a violation of La.R.S. 14:3o.!.[1] He was convicted as charged on June 16, 1983, after a trial by jury. On August 1, 1983, the district court sentenced Hampton to life imprisonment at hard labor.
The defendant was granted an appeal to this court. However, his attorney failed to file a brief arguing any assignments of error. This court reviewed the record for errors patent, and found none. Therefore, the con *508 viction and sentence were affirmed. See State v. Hampton, 458 So.2d 1000 (La.App. 3 Cir.1984). It does not appear that Hampton sought review by the Supreme Court.
On June 17, 1991, the defendant filed for post-conviction relief, raising nine errors, including ineffective assistance of counsel. The state responded, addressing each claim. On March 2, 1992, the district judge denied the application. Apparently, the defendant did not seek further review at that time. Hampton later filed a second application for post-conviction relief, again raising ineffective assistance of counsel. The state filed a procedural objection and answer. On October 28, 1992, the district court denied the application as repetitive and untimely. Hampton then sought writs to this court. Writs were denied. State v. Hampton, 93-84 (La.App. 3 Cir. 6/14/93). He did not seek review of the denial of his writ application.
The defendant applied to the Louisiana Supreme Court, alleging this court erred in 1984 when it found no errors patent. He also argued this court should have held he had ineffective assistance of counsel, due to his attorney’s failure to file or brief errors. The supreme court ordered an out-of-time appeal. State v. Hampton, 93-2022 (La.2/9/96); 667 So.2d 550. The defendant now appeals his original conviction and sentence.
CREDIT FOR TIME SERVED
In reviewing this record for errors patent on the face of the record as required by La.Code Crim.P. art. 920, we have noted that the defendant was not given credit for time served. La.Code Crim.P. art. 880 provides that when imposing sentence the court shall give the defendant credit toward service of his sentence for time spent in actual custody before the imposition of sentence. Therefore, we will amend the sentence to reflect that the defendant is given credit for time served before the execution of the sentence. See La.Code Crim.P. art. 882(A). Resentencing is not required. However, the case is remanded. The district court is ordered to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served. State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94); 640 So.2d 561, writ denied, 94-1455; 651 So.2d 858 (La.3/30/95). The defendant’s trial took place in 1982. La.Code Crim.P. art. 880 was in force at that time. Although Hampton received a mandatory life sentence, La.Code Crim.P. art. 880 applies to life sentences. State v. Howard, 626 So.2d 459 (La.App. 3 Cir.1993).
JURY VENIRE
The defendant first alleges that the trial court erred by not granting his motion to quash the jury venires. On appeal, he urges more than one basis for the motion.
First, Hampton argues that African-Americans were improperly excluded from the grand jury. However, the defendant failed to timely raise this issue in his motion to quash, and alleges no facts supporting his current argument. Louisiana jurisprudence requires that challenges to the grand jury venire be raised by motion to quash, filed within fifteen days of arraignment. La.Code Crim.P. arts. 521 and 535. State v. Dillard, 320 So.2d 116 (La.1975).
LThe defendant makes a similar argument regarding the petit jury venire, an issue which was properly raised by motion to quash. The defendant objected that the jury pool did not represent a fair “cross-section of the community” because it contained no black people. The trial court noted that the venire selected using a computer-generated list of names drawn from the voter registration rolls. Further, many African-American venire members received hardship excuses. As a result, the black defendant was left with an all white venire for jury selection.
The defendant attempts to employ Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) to support his argument. However, Batson does not apply, because it guards against prosecutorial misconduct, rather than decisions made by the court. Venire-related objections have produced a separate line of cases.
In State v. Matthews, 552 So.2d 590, 596-597 (La.App. 2 Cir.1989), writ denied, 559 So.2d 137 (La.1990), the second circuit stated:
*509 The defendant argues that the trial court erred in denying his motion to quash the jury venire on the basis of selection procedures which fail to insure representation of a fair cross section of the community-
Prior to trial, the defendant filed a motion to quash the jury venire. He claimed that, because the venire was selected from lists of licensed drivers and registered voters in the parish, it failed to insure a representation of a fair cross section of the community.
On appeal, the defendant argues that other sources, such as telephone listings and church membership roles, should have also been utilized in choosing the jury veni-re in order to provide a representative cross section of the community. This argument is meritless.
LSA-C.Cr.P. art. 419(A) provides:
A general venire, grand jury venire or petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race.
In State v. Sheppard, 350 So.2d 615 (La.1977), the Supreme Court upheld a general venire composed of a list of registered voters and persons with driver’s licenses residing in the parish, where there was no showing that such a selection process was discriminatory. The jurisprudence allocates to the defendant the burden of establishing fraud or that some irreparable injury was caused by the jury selection process and in the absence of such a showing, a jury venire will not be set aside. State v. Procell, 332 So.2d 814 (La.1976); State v. Lynch, 323 So.2d 781 (La.1975); State v. Liner, 397 So.2d 506 (La.1981); State v. Brown, 395 So.2d 1301 (La.1981).
Additionally La.Code Crim.P. art. 783(B), states that:
B. If jury service, whether criminal or civil, would result in undue hardship or extreme inconvenience, the district court may excuse a person from such service either prior to or after his selection for the general venire, jury pool, or jury wheel. The court may take such aetion on its own initiative or on recommendation of an official or employee designated by the court.
Since the defendant’s allegations center on the pre-selection venire, rather than prosecu-torial actions in the jury selection process, we conclude that Matthews is applicable to the facts of this case. Because Hampton has failed to demonstrate fraud, irreparable injury, or systematic exclusion of African-Americans from the venire, as required by La.Code Crim.P. art. 419, his argument regarding the jury venire fails.
| (¡PHOTOGRAPHIC EVIDENCE
Hampton next claims the district court erred by admitting two photographs into evidence. The two pictures depicted the lounge area of the Chicken Shack Cafe, and the victim lying face-up, respectively. Hampton argues that because the photographs were gruesome, their probative value had to outweigh their prejudicial effect for them to be admissible. State v. Bourque, 622 So.2d 198 (La.1993).
During trial, the defense objected arguing that the pictures were introduced to inflame the jury, and that they were repetitious of other photographic evidence. Further, the defendant contends one photograph showed the victim’s body as it appeared after it was moved, not its actual position resulting from the crime.
Hampton also argues that the photographs were unnecessary and of low probative value, because key issues such as number and location of wounds, and the identity of the victim were proved by other evidence. The state asserts that the photographs were admissible to corroborate the other evidence. The standard of review in this situation is abuse of discretion. In a similar situation, this court wrote:
As a part of its fact-finding and guilt determination function, a jury is entitled to the benefit of all of the evidence, including photographic evidence introduced during trial. State v. James, 339 So.2d 741 (La.1976). However, this is a general rule and is subject to exceptions. Photographs *510 which are unduly prejudicial in nature are not admissible into evidence. The test for admissibility of gruesome photographs is whether their probative value outweighs any prejudicial effect. A trial court’s ruling in this regard will be disturbed only if the prejudicial effect of the photographs clearly outweighs the probative value. Also, photographs which illustrate any fact, shed light upon any fact at issue in the ease, or that are relevant to describe the person, place or thing depicted are generally admissible. State v. Boyer, 406 So.2d 143 (La.1981).
The photograph at issue in the present ease depicts the scene of the crime. The content of the photograph reveals the area of the attack, the weapon used and the blood lost by the victim. Admittedly, there was other testimony presented at trial which generally described the scene and the attack. There was also testimony presented by Dr. Ettinger, the treating physician, which 17described the wounds received by Frederick and the blood loss which could occur from these wounds. However, there can be no doubt that the jury was aided by the photograph which depicted the conditions which were described to them through testimony.
[[Image here]]
[T]he State had to prove the intentional infliction of great bodily harm in order to convict defendant of attempted first degree murder. LSA-R.S. 14:27 and 14:30. The photograph of the blood lost by the victim is probative of the extent of the injuries received by the victim. This is especially true in light of the fact that photographs taken of the victim at the hospital were taken after he had been treated for his wounds.
State v. Breaux, 546 So.2d 1352, 1355 (La.App. 3 Cir.1989).
The black and white photographs show a large amount of blood; one shows a full view of the victim’s body. However, as in Breaux, the prosecution had to prove specific intent to kill or inflict great bodily harm.
We cannot say the district court abused its discretion by admitting the photographs.
TESTIMONY OF JOYCE HOLMES
The defendant next asserts that the trial court erred in placing state witness Joyce Holmes[2] under the rule of sequestration, and in subsequently allowing her to testify. Holmes was not present when trial began; she arrived later and sat in the courtroom while another state witness was testifying.
The defendant objected to Holmes being placed under the rule of sequestration, and later objected to her testifying in the case. Both objections were based upon her presence in the courtroom while another witness was giving evidence. Holmes was removed from the courtroom after being placed under the rule of sequestration. When she was later brought in to testify, the district court held a hearing outside the jury’s presence to determine whether Holmes was qualified to testify. During the hearing, |8three witnesses testified that Holmes had been present in the courtroom to hear the testimony of a previous witness. The trial judge stated that this testimony did not alter his earlier ruling or reasoning regarding Holmes’ sequestration.
At the time of the trial, 1983, La.Code Crim.P. art. 764 read:[3]
Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
The Louisiana Supreme Court interpreted La.Code Crim.P. art. 764:
Violations of the sequestration rule are claimed by the defense in connection with *511 the testimony of several State witnesses. Before ruling on defense objections to the testimony of witnesses who had violated the rule of sequestration, the trial judge required that the witnesses involved be interrogated under oath to determine whether their transgression had any prejudicial effect. In no instance was it disclosed that the technical violations were willful or harmful to the defendant. Satisfied that this was the case, the trial judge overruled the objections and permitted the witnesses to testify.
Sequestration is designed to prevent the influencing of witnesses by testimony of prior witnesses and to strengthen the role of cross-examination in developing the facts. State v. Mullins, 353 So.2d 243 (La.1977). Article 764 of the Code of Criminal Procedure permits the court to modify its order in the interest of justice, a broad authorization vesting much discretion in the trial judge. A review of this record discloses no undue influence resulted to the witnesses in question from violation of the rule. There was, therefore, no abuse of discretion in the ruling of the trial judge.
State v. Jackson, 362 So.2d 1082, 1087 (La.1978).
Subsequent applications of La.Code Crim.P. art. 764, as it existed then, remained consistent. See State v. Hereford, 518 So.2d 515 (La.App. 3 Cir.1987).
Jain the present case, before Holmes testified, the district court held a hearing out of the jury’s presence to determine her eligibility to testify. The defendant brought in witnesses who stated that Holmes came into the courtroom during the middle of Georgia Thomas’ testimony. Apparently, Thomas was the only witness Holmes heard. At the close of the hearing, the judge said the testimony would not alter his previous ruling as to Holmes. Our review of Holmes’ testimony does not reveal any prejudice resulting from Holmes’ exposure to Thomas, nor does the defendant point to any undue influence. Considering the wide latitude accorded to district courts by prior La.Code Crim.P. art. 764, we cannot say the district court abused its discretion.
MOTION FOR NEW TRIAL
The defendant next contends the district court erred in not granting his motion for new trial. On August 1, 1983, the district court heard argument on Hampton’s motion.
At the time of the trial, La.Code Crim.P. art 851, “Grounds for new trial,” read:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
110(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
Although he alleged three bases for granting a new trial, Hampton acknowledges that at the hearing, he presented evidence only as to his “media prejudice” argument. This evidence took the form of two newspaper articles dated June 16 and 17, 1983. At the hearing, Hampton’s trial counsel complained the first news story presented an erroneous rendition of the defendant’s prior record.
*512 A reading of the transcript shows that defense counsel had the mistaken impression the district court’s rules governed media conduct. However, the court pointed out that such prior restraint would violate constitutional protections. Therefore, the basis of Hampton’s original argument was incorrect. Additionally, the defendant is unable to show any prejudice from the media coverage.
Hampton now characterizes his second ground as a sufficiency-based argument. However, his argument goes to the weight and credibility of the evidence. At the hearing on the motion, he argued the gun residue test, which faded to reveal residue on his hands, and the witnesses’ demeanor should have created reasonable doubt. This is a credibility argument, because it involves the weight of the evidence, rather than indications that any of the crime’s elements were unsatisfied.
A determination of the weight of evidence presented is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of credibility of the witnesses and is a matter of weight of the evidence and not sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). This determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.), writ denied, 507 So.2d 226 (La.1987).
InA fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Where rational triers of fact could disagree as to the interpretation of the evidence, only irrational decisions to convict will be overturned. See State v. Mussall, 523 So.2d 1305 (La.1988).
Hampton further argues that he should have been granted a new trial to enable him to present testimony about the alleged role of a third party in this matter. When the defendant took the stand, he claimed he was “taking the rap” for Gerald Carr. Carr was a state witness, but according to Hampton, Carr worked for June Boy Clayton, and the defendant feared both men because they were influential, dangerous criminals. It was allegedly due to this fear that Hampton turned himself in to police and gave two separate statements in which he confessed to killing the victim. He also testified that he and his cell mate had been stabbed while in jail and attributed the incident to Clayton’s influence. However, he had no corroborating evidence to that effect.
In order to support his claims, Hampton tried to use two witnesses, James Burgess and Dennis Nall. Both men are prisoners serving life terms for first degree murder, and were apparently in the same cell block of the parish jail as Gerald Carr, who was incarcerated at the time of trial on a drug charge. The defendant was apparently trying to establish that Carr threatened Hampton’s life the night before the defense put on its case. The district court excluded the men’s testimony as hearsay. However, despite the objection to his testimony, Nall did say, “[If][s]omebody [was] trying to kill me, I’d get awful upset about it.” Similarly, Burgess said, “... he (Carr) said he was going to kill him (Hampton) ...” after the state objected. Because the court sustained the prosecution’s objections, neither man presented farther evidence on the matter. However, these partial statements convey what the defense was trying to put before the jury.
112TI1ÍS testimony was hearsay, in that it referred to out-of-court statements made by a person other than the testifying witness, offered to prove the truth of the matter asserted: that Carr had threatened Hampton’s life. Defendant’s argument at trial, and at his motion for new trial, was that the state and federal constitutions allow criminal defendants some leeway in the presentation of their defenses. The district court acknowledged this as a general proposition, but decided to sustain the state’s hearsay-based objections, stating, “[t]hat doesn’t mean it [the hearsay rule] can be completely done away with.”
When the defendant’s girlfriend, Priscilla Ann Jackson, was recalled, she testified that threats were made against the defendant’s *513 family the night before. The court sustained the prosecution’s hearsay-based objection, but the defendant neither objected nor raised the constitutional argument. Earlier in the trial, the defense called Officer Johnny Smith of the Alexandria Police Department to testify about the dangerous propensities of June Boy Clayton and another man, Love Johnson, but the evidence was excluded on relevancy grounds. Although he stated his reasons for wanting the evidence in the record, defense counsel did not object to the trial court’s ruling, nor did he make a constitutional argument.
Counsel raised his constitutional argument at the hearing on the motion for new trial. The district court denied the motion without making a specific reference to the constitutional considerations. The applicable law at the time of the trial is contained in State v. Ludwig, 423 So.2d 1073, 1079-80 (La.1982), which states:
It is generally accepted that the trial judge should exclude circumstantial evidence, even though logically relevant, if its probative value is outweighed by the risk that its admission will consume too much time, unnecessarily confuse the jury concerning the issues to be determined, tend to excite the emotions of the jury to the undue prejudice of the opponent, or unfairly surprise the opponent. See, e.g., State v. Prieur, 277 So.2d 126 (La.1973); State v. Morris, 362 So.2d 1379 (La.1978); United States v. Hearst, 563 F.2d 1331, 1348-49 (9th Cir.1977) cert denied, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978). See also Fed.R.Evid. 403; Weinstein’s Evidence, § 403[06]. The probative value of evidence of a possibly accidental shooting six months before the charged offense was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue delay or waste of time. Accordingly, the evidence was properly excluded by the trial court despite the fact that it was relevant and of some slight probative value.
Defendant argues that the trial court’s exclusion of the evidence violated his federal and state constitutional rights to present a defense and to confront and cross-examine his accusers. These constitutional guarantees do not, however, require a trial court to permit the introduction of evidence that is irrelevant or which has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. For example, in Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), upon which defendant relies primarily, the evidence which the high court held had been unconstitutionally excluded was highly relevant and “critical to Chambers’ defense.” 410 U.S. at 302, 93 S.Ct. at 1049. The proffered evidence included: (a) The cross-examination of trial witness McDonald concerning his confession to the very crime for which defendant Chambers was on trial and (b) the examination of three other witnesses who would testify to McDonald’s confessions to the crime on separate occasions and to corroborating circumstances. The evidence was, of course, extremely relevant, because it related to the crime for which the defendant was on trial and tended to completely exculpate him. The fact that the evidence was highly probative of a very consequential fact was an essential ingredient in the high court’s determination that Mississippi deprived Chambers of a fair trial by excluding critical evidence under its voucher and hearsay rules. In the present case, the evidence which the defendant sought to introduce was at most of only slight probative value because it concerned a shooting which occurred six months before the charged offense involving a leg or foot wound which may have been unintentional under the terms of the proffer.
Other states allow the introduction of evidence incriminating a third person only when such third person has been closely linked to the commission of the crime. See Wharton, Criminal Evidence § 195 (1972). One early Louisiana case stated a broad rule which allows evidence incriminating a third person when such evidence would establish a reasonable hypothesis of that person’s guilt or a reasonable doubt of the guilt of the defendant. State v. Jenkins, 134 La. 185, 63 So. 869 (1913). This early expressed, less vigorous, rule of Lou *514 isiana arguably has validity in Louisiana today through the constitutionally guaranteed Ii4“right to represent a defense” of Art. I, § 16 of the Louisiana Constitution of 1974.
In State v. Bolden, 95-749 (La.App. 3 Cir. 4/17/96); 680 So.2d 6, this court rejected a similar constitutionally-based argument, giving three main reasons for this rejection:
1. The defendant’s proffers contained few facts for analysis.
2. The excluded evidence did not directly implicate a third party.
3. The evidence was not relevant.
Since the defendant did not proffer the testimony of Nall or Burgess, we cannot say with certainty what its content would have been. It does not appear that it would have directly implicated Carr in the offense at issue. Further, it does not appear that the absence of the testimony hindered Hampton’s defense. Hampton was able to testify as to his version of the events, and about his fears of Carr and June Boy Clayton. The jury also heard fragments of testimony from Burgess, Nall, and Priscilla Jackson that indicated threats were being made against the defendant and his family. Additionally, as noted before, the threats did not occur at the time of the offense. Further, reading of the record reveals Carr’s testimony was not inherently damaging to Hampton. Carr said he did not see Hampton with a gun, he did not see the shooting, and that there were shots fired after the defendant had run out of the Chicken Shack. While he gave evidence that generally aided the state’s case, Carr was an equivocal prosecution -witness. Accordingly, this court finds no merit in the defendant’s constitutional argument. The defendant argues this assignment on constitutional grounds, and his trial argument was also based on the constitution, rather than the rules of evidence. In fact, trial counsel acknowledged the evidence at issue was not normally admissible. As a result, we find no error in the trial court’s rejection of the defendant’s motion for new trial.
Ji_6LEGALITY OF THE SENTENCE
Finally, the defendant contends he received an illegally lenient sentence, in that the district court sentenced him to life imprisonment “without benefit of probation or parole,” omitting the phrase “or suspension of sentence.” The omitted phrase is part of the mandatory sentencing language of La. R.S. 14:30.1. Hampton argues that, as a result, his sentence should be vacated and his case remanded for resentencing. He adds that before resentencing, he is entitled to file new motions, such as a new motion for new trial.
In State v. Harris, 95-1098 (La.1/5/96); 665 So.2d 1164, the Louisiana Supreme Court stated:
The presumption of regularity in judicial proceedings, see La.Rev. Stat. 15:432; State v. Davis, 559 So.2d 114 (La.1990), C.E. Torcia, Wharton’s Criminal Procedure, § 641 (12th ed. 1976), applies to all phases of trial, including sentencing. In the absence of an articulable basis for concluding that the district court imposed sentence under a misapprehension of what the law required or of its full range of sentencing discretion, we will presume that the failure of the court expressly to impose the special restrictions required by law (e.g., parole disability) presents the need only for ministerial correction of the record. Cf. La.Code Crim.Proc. art. 916(2) (allowing the correction of any error or deficiency in the record even while a case is pending on appeal).
A district court judge presented with an application to correct an illegally lenient sentence may therefore correct a sentence that he or she has imposed by making the necessary changes in the minutes, without bringing the inmate to court, and sending a certified copy of the new minutes to the inmate and to the relevant prison authorities, who otherwise lack the discretion to make the amendments themselves in the documents they receive from the sentencing court pursuant to La.Code Crim.Proc. art. 892. State ex rel. Pierre v. Maggio, 445 So.2d 425 (La.1984); State ex rel. Almore v. Criminal District Court, Parish of Orleans, 433 So.2d 712 (La.1983). The judge may also make the same ministerial corrections to a sentence imposed by a predecessor unless he or she entertains a *515 reasonable doubt as to the intent of the original sentencing judge and the validity of the sentence imposed by the original sentencing judge. In all eases, a district judge retains the discretion to vacate the sentence originally imposed and to resen-tence the inmate in open court.
_Ji6Ünder Harris, the intent of the original judge at the 1983 sentencing does not present difficulty, because the penalty for second degree murder is mandatory.
A correction of the record is unnecessary. The district court had the sole authority to suspend the sentence, but did not do so. La.Code Crim.P. art. 893. Therefore, there is no practical necessity for correction of the record.
CONCLUSION
For these reasons the sentence and conviction are affirmed. However, the case is remanded. The district court is ordered to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served.
AFFIRMED.

. At the time of the offense, he was on parole for another crime. See State v. Hampton, 337 So.2d 201 (La.1976).

. The minutes also identify this witness as Dorothy Holmes.

. La.Code Crim.P. art. 764 was modified effective January 1, 1989, shifting statutory authority to La.Code Evid. art. 615.