NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-379

STATE OF LOUISIANA

VERSUS

CALVIN JOSEPH CELESTINE, II

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 275265
HONORABLE F. RAE DONALDSON SWENT, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE
**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and J. David Painter, Judges.

AFFIRMED AND REMANDED WITH INSTRUCTIONS.

James C. Downs
District Attorney - Ninth Judicial District Court
T. Gerald Henderson
Assistant District Attorney
P. O. Box 1472
Alexandria, LA 71309
Telephone: (318) 473-6650
COUNSEL FOR
        Plaintiff/Appellee - State of Louisiana

G. Paul Marx
P. O. Box 82389
Lafayette, LA 70598-2389
Telephone: (337) 237-2537
COUNSEL FOR:
        Defendant/Appellant - Calvin Joseph Celestine, II

THIBODEAUX, Chief Judge.

The Defendant, Calvin Joseph Celestine, II, appeals his jury conviction of manslaughter on the bases of insufficiency of the evidence and the trial court's alleged error in preventing him from fully confronting a State witness in violation of his Fifth and Sixth amendment rights. We affirm his conviction and sentence of twenty years at hard labor.

## LAW AND DISCUSSION

### Insufficiency of the Evidence

The Defendant attacks the sufficiency of the evidence adduced against him at trial. The analysis for such an argument is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The Defendant's argument attacks the credibility of the State's main witnesses. Teenager Majahad Zeidan was the sole eyewitness to the crime, and Geraldine Hampton overheard the Defendant admitting to the crime.

The Defendant claims in his brief that Majahad's testimony was "disjointed and jumbled." Further, he argues "[t]he contradictions in the youth's story raise serious questions about his identification of [Defendant]."

Majahad testified that Arabic is his first language; English is his second language. The trial transcript indicates he lacked full fluency in English, but shows he was able to communicate the essential facts of the case.

Majahad testified that he and his brother, Sameh Zeidan, operated a convenience store. The victim, Dewayne Davis, was barred from the store because of past problems at the store. On the night of the shooting, Davis appeared on the store's property. Sameh advised him to leave after refusing to serve him. He exited the store. About five minutes later, the Defendant, who was apparently inside of the store, also exited and shot Davis in the back of the head. He identified the Defendant during the court proceedings.

When challenged on cross-examination, Majahad admitted the police report did not contain the assertion that the Defendant was inside of the store. However, Majahad said he told the police "what happened exactly."

Sameh testified that the Defendant was also unwanted at the store because of past thefts from that location. He knew both the Defendant and the victim. While he did not see the shooting, Majahad told him about it and described the Defendant as the assailant. Sameh identified the Defendant in some photographs shown to him by the investigating officers.

Although the brothers lacked full command of the English language, their testimonies were not so contradictory as to be incredible. Since Sameh admitted he did not see the shooting, his testimony's main significance on review lies in the degree to which it might contradict Majahad's. In his brief, the Defendant does not

2

point to any particular contradiction between the brothers' testimonies. The Defendant claims Sameh testified that both the Defendant and the victim were barred from the store, but his testimony shows the Defendant was allowed in the store just before the shooting, while the "other guy," apparently meaning the victim, was kept out.

The fact that the Zeidan brothers' testimonies were difficult to understand does not render them incredible. As mentioned at the beginning of this analysis, the credibility of witnesses is within the province of the fact-finder. It is rare for this court to overturn credibility determinations made at the trial level. As this court has explained:

> As mentioned in *Kennerson*, credibility assessments are within the province of the fact-finder, in this case the jury. A jury may "accept or reject, in whole or in part," any witness's testimony. *State v. Silman*, 95-0154, p. 12 (La. 11/27/95), 663 So.2d 27, [35]. Clearly, the jury believed the victim's version of events, and Hypolite's brief offers no concrete reason why the jury's conclusion should be considered unreasonable. This court will overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way. *See, e.g., State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670, wherein one eyewitness had consumed a large amount of alcohol before the offense and the other was a minor who believed all white men looked alike, and defendant was white.

*State v. Hypolite*, 04-1658, pp. 4-5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279.

The Zeidans' testimonies do not indicate that either of them was unable to accurately perceive events as they happened. Thus, their credibility was squarely a matter for the jury.

The Defendant also claims Majahad testified to "information only available in the police report," i.e., the denominations of the money the victim had in his hands. However, as the State points out, another explanation for Majahad's

3

knowledge is that he saw the bills himself. The Defendant also observes the murder weapon was not introduced. Apparently, it was not recovered. However, as it is undisputed that the victim died of a gunshot, and the State presented Majahad's eyewitness testimony, the lack of a gun in evidence is a matter of weight. It does not present a missing element of the crime. *See, e.g.*, *State v. Hampton*, 96-608 (La.App. 3 Cir. 12/11/96), 687 So.2d 505, *writ denied*, 97-16 (La. 5/9/97), 693 So.2d 766.

The Defendant observes that State witness Geraldine Hampton testified she overheard the Defendant tell her boyfriend that he had killed someone. She later learned through her boyfriend that the person the Defendant had killed was the victim, her cousin.

The Defendant argues that, because the State did not produce Hampton's boyfriend to testify, this court should presume he would not have corroborated her testimony. However, the State in brief points out "that the [adverse] presumption [rule] 'does not arise if the witness is equally available to both the state and the defense. . . .' *State v. Simms*, 381 So.2d 472, 476 (La.1980)." On review, the availability of Hampton's boyfriend is not clear; however, it appears the Defendant made no attempt to raise the adverse presumption rule below.

Since the rule was not brought to the attention of the trial court or the jury, this is a new issue that should not be addressed on review. Uniform Rules—Courts of Appeal, Rule 1-3; *see also State v. McLeod*, 03-50 (La.App. 3 Cir. 4/30/03), 843 So.2d 1268.

The Defendant also notes that he presented alibi witnesses at trial. He gives a succinct summary of their testimony in his brief:

> The defense presented testimony of several alibi witnesses. Jaqueline [sic] Madden, Calvin's girlfriend, said that she had been with Calvin most of the night. (Rec. p. 212 - 213) Her mother Lessie Madden testified that

4

Calvin was at the house with her daughter until after 12:30 pm (Rec. p. 240) Jarvis Johnson confirmed that he picked up Calvin from the Madden home at 12:30 and they went to Club 318 until closing time, after 1:30 am. (Rec. p. 266) Kimberly Walters also testified she saw Calvin and Jacqueline asleep on the couch at 11:00 pm. (Rec. p. 275) Dominque Teasley saw Calvin at Club 318 between 12:30 and 1:30 am. (Rec. p. 266)

The State counters that Jacqueline Madden was the only one of those witnesses to testify that she was with the Defendant at the time the shooting occurred. She admitted she was asleep at that time, but testified the Defendant had fallen asleep with her. She claimed she would have known if he had left, because they had fallen asleep with the Defendant's arm under her neck. She testified that since his arm was under her neck, she would have known if he had gotten up.

As with the State's witnesses, the credibility of the Defendant's alibi witnesses was a matter for the jury to weigh. A jury "may accept or reject, in whole or in part, the testimony of any witness." *Hampton*, 687 So.2d at 512. In *State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670, this court found alibi testimony persuasive. However, the testimony of the State's eyewitnesses in that case was highly suspect. The witnesses in *Bourque* were a child who thought all white men looked alike (the defendant was white) and an adult who had consumed a large amount of alcohol before the incident at issue. *Id*. Thus, those witnesses' own testimony cast doubt on their ability to objectively and accurately perceive the events they purportedly witnessed. As already noted, the eyewitness in the present case, despite his apparent difficulties with the English language, did not present the same sort of credibility problem as the witnesses in *Bourque*.

For the reason discussed, this assignment lacks merit.

**Abridgement of Right to Confrontation**

The Defendant argues the trial court erred by preventing him from fully cross-examining a State witness, ultimately in violation of his constitutional right to confrontation of witnesses. During cross-examination of Detective George Tynes, the Defendant's trial counsel asked whether the police report identified the owner of a car found at the scene as "a drug dealer." The State made a hearsay-based objection, which the court upheld. The Defendant objected to the trial court's ruling.

Earlier testimony by Sergeant William Bates established that there was an empty car at the crime scene, with its engine running. Bates also stated it was the car the victim had driven to the scene. On re-cross-examination, he testified the car belonged to Rufus Jackson, who was not present at the scene.

The trial court disallowed the Defendant's counsel to question Detective Tynes about the contents of the police report's reference to "a drug dealer." The trial court was correct. The contents of police reports are inadmissible hearsay. La.Code Evid. art. 803(8)(b)(i); *State v. Berkeley*, 00-1900 (La.App. 5 Cir. 5/30/01), 788 So.2d 647, 653, *writ denied*, 01-1659 (La. 4/26/02), 814 So.2d 549; *see also State v. Karam*, 02-0163 (La.App. 3 Cir. 7/31/02), 834 So.2d 1003.

However, the supreme court has explained:

> As a general matter, this court has recognized that under compelling circumstances a defendant's right to present a defense may require admission of statements which do not fall under any statutorily recognized exception to the hearsay rule. *State v. Van Winkle*, 94-0947 (La. 6/30/95), 658 So.2d 198; *State v. Gremillion*, 542 So.2d 1074 (La.1989). *See also, Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Normally inadmissible hearsay may be admitted if it is reliable, trustworthy, and relevant, and if to exclude it would compromise the defendant's right to present a defense. *Van Winkle*, 94-0947 at 6, 658 So.2d at 202.

6

*State v. Juniors*, 03-2425, pp. 44-45 (La. 6/29/05), 915 So.2d 291, 325-26, *cert. denied*, ___ U.S. ___, 126 S.Ct. 1940 (2006).

Also, the *Juniors* court stated that, even if any error occurred, it was harmless. *Id.*

In the present case, the relevance of the evidence at issue was not established. As the State points out in its brief, the record contains uncontroverted testimony that the victim drove a car belonging to Rufus Jackson Johnson to the scene.[1] There is no indication in the record that Johnson himself was at the scene of the offense.[2] Therefore, the matter of whether or not he was a drug dealer has no relevance to the case at hand. Also, the trial transcript does not indicate the Defendant tried to secure Johnson's presence as a witness.

In his reply brief, the Defendant argues that Bates had no personal knowledge regarding how the victim got to the scene. This argument is ineffectual, as the Defendant failed to object to, or refute, the detective's testimony that the victim drove the car to the scene. Also, the reply brief suggests the State had to prove Johnson was not at the scene at the time of the shooting. However, such proof was unnecessary in light of Majahad's eyewitness testimony.

For the reasons discussed, the assignment lacks merit.

---

[1] As the State notes, the Defendant states the car's engine was running and its door was open. Although Bates testified the engine was running, we have not located any testimony that the car's door was open. The crime scene photographs show the door closed.

[2] Rufus Jackson Johnson was variously referred to as either "Rufus Jackson" or "Rufus Johnson" at different points in the trial. During one colloquy, he is identified as "Rufus Jackson Johnson."

## ERRORS PATENT

The trial court failed to inform the Defendant of the prescriptive period for filing post-conviction relief. Such notice is required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform the Defendant of the prescriptive period by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion. Additionally, the trial court should be instructed to file written proof of the notice in the record of these proceedings. *See State v. Roe,* 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## CONCLUSION

The Defendant's conviction is affirmed. However, the case is remanded, and the trial court is instructed to inform the Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending him appropriate written notice within ten days of the rendition of this opinion. Additionally, the trial court should be instructed to file written proof of the notice in the record of these proceedings.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules—Courts of Appeal.