649 So.2d 670 (1994)
STATE of Louisiana,
v.
Larry BOURQUE.
No. CR 94-291.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
Morgan J. Goudeau, III, Opelousas, for plaintiff appellee.
Edward J. Lopez, Opelousas, for defendant appellant.
Before DOUCET, PETERS and BERTRAND[*], JJ.
PETERS, Judge.
The defendant, Larry Bourque, was convicted after a jury trial of the illegal use of weapons or dangerous instrumentalities, a violation of Louisiana Revised Statutes 14:94, and was sentenced to serve eighteen months of incarceration subject to an appropriate work release program. His appeal of this conviction and sentence is based on a single assignment of error in which he contends the evidence adduced at trial was insufficient to support his conviction.

FACTS
In the early evening of November 3, 1992, someone discharged a firearm into the bedroom of Apartment Number One of the Darjean Apartments in Opelousas, Louisiana. At least two shots entered the bedroom through the window and one of these penetrated the inner wall into the front room of the apartment. Although the apartment was occupied by three people, no one was injured.
The defendant was the lessee of the apartment and also operated a taxi service from a location directly behind the apartment complex, or on the same side as the bedroom which was the target of the gunfire. The *671 physical evidence revealed that the weapon was discharged from the direction of the taxi stand.
At the time of the offense, Apartment Number One was being occupied by Pamela Rideau, the defendant's girlfriend; by Caressia Antoinette Rideau, Pamela's seventeen year old niece; and by Pamela's ten month old son, D'Andre. Pamela Rideau had spent the previous night in the apartment with the defendant.
During their investigation the police found two individuals who claimed to have witnessed the offense. Both identified the defendant as the man who fired the shots. The defendant denied these allegations and claimed to have been in Carencro, Louisiana at the time of the shooting. As stated, the defendant was convicted and has perfected this appeal.

OPINION
The defendant's sole contention is that the evidence was insufficient to support his conviction. He bases this contention on the jury's assessment of the credibility of the witnesses. On this issue, the law is clear.
"When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983)." State v. Fontenot, 616 So.2d 1353, 1357 (La.App. 3d Cir.), writ denied, 623 So.2d 1334 (La.1993).
See also State v. Desselle, 614 So.2d 276 (La.App. 3d Cir.1993).
The burden is on the state to prove each and every element of the offense beyond a reasonable doubt. As previously noted, the offense charged is defined in Louisiana Revised Statutes 14:94. In this case, the principle element in dispute is the identity of the offender.
One of the state's two eyewitnesses was an eleven year old black boy named Marvin Jones. Marvin lives in the apartment adjacent to Apartment Number One. He initially testified that he was in his apartment and heard people "fussing" in the direction of the taxi stand. He recognized the defendant's voice as being one of the individuals he heard. He further testified that when he went to the window he saw the defendant run between some cars and start shooting. Marvin was able to identify the defendant as the man firing the weapon because of his voice and because he had seen him earlier that day and recognized his clothing. However, on cross examination he was unable to explain why he was familiar with the defendant's voice and could not describe the defendant's clothes. Further, he acknowledged that he had seen the defendant only "every now and then." Additionally, the record reflects significant discrepancies as to the witness's location during the shooting and as to where or from whom the defendant obtained the gun.
The state attempted to rehabilitate its witness on redirect examination, but Marvin's responses raised more questions concerning his ability to identify the defendant. This is reflected by the following exchange between counsel for the state and the witness:
"Q. If there's any confusion in your mind, now is the time to bring it out; you understand?
A. Yes.
Q. Now, is there any confusion, are you at all uncertain, that this is the man that you saw running there that night shooting?

*672 A. It could've been him and it could've not been him.
Q. It could've been somebody else?
A. Yes; `cause I know all the white men they look something alike around there.
Q. All white men look alike?
A. Yeah, to me they do."
The additional questions posed to the witness reflect further confusion as to the facts. He indicated there were four other men present outside his window at the time of the shooting, including two whites and two blacks. He could not identify any of the other four individuals. In fact, he acknowledged that the person with the weapon could have been one of the other white men. At best, he was only certain that the man who fired the shots was white.
The other state's witness, Larry Doucet, testified that he and two other men were sitting under a tree across the street from the taxi stand when he saw the defendant fire the weapon in the direction of the apartment. The police only became aware of this eyewitness the day after the offense. Doucet had been arrested the night before for appearing intoxicated in public and was being questioned in connection with a reported arson in the area. Although he admitted that before the shooting he had consumed approximately a fifth of "Mad Dog" liquor, he was able to recall that Pamela Rideau and the defendant had been involved in an argument at the taxi stand approximately thirty minutes before the shots were fired.
One of the other men with him, Donald White, was called to testify and denied Doucet's version stating that not only had he not been with Doucet the day of the offense, but he was not in the area of the taxi stand at the time of the shooting. Pamela Rideau also testified denying that she and the defendant had argued that day. She did acknowledge that approximately thirty minutes prior to the shooting she had gone to the taxi stand to locate the defendant but he was not there. Additionally, the defendant presented numerous alibi witnesses who testified that he was not even present at the taxi stand at the time of the shooting, but was in Lafayette Parish at a car lot adjacent to the Paddock Lounge purchasing a vehicle.
The defense argues that because the testimony of its witnesses directly contradicts the testimony of the state's witnesses, the state's evidence is insufficient to support a conviction.
A credibility determination made by a trier of fact will not be overturned on appeal absent manifest error. State v. Nolan, 503 So.2d 1186 (La.App. 3d Cir.1987) writ denied, 507 So.2d 226 (La.1987). However, the mere fact that the issue is a credibility determination does not limit the obligation of the reviewing court. The Louisiana Supreme Court has established the methodology of applying the Jackson standard to a criminal appeal.
"After reviewing Jackson and the foregoing authorities, we conclude that a reviewing court may not disregard its duty under due process of law as interpreted by Jackson v. Virginia simply because the record contains testimony which tends to support each fact necessary to constitute the crime. If the court finds that no rational trier of fact viewing all of the evidence from a rational pro-prosecution standpoint could have found guilt beyond a reasonable doubt, the conviction cannot stand constitutionally. The actual trier of fact's rational credibility calls, evidence weighing and inference drawing are preserved through the requirement that upon judicial review all of the evidence is to be considered as if by a rational fact finder in the light most favorable to the prosecution, and by the admonition that the sufficiency inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt".

State v. Mussall, 523 So.2d 1305, 1311 (La.1988).

CONCLUSION
Once these precepts are applied to this case, we must conclude that any rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, necessarily must have a reasonable doubt as to *673 the defendant's guilt. Eyewitness testimony alone can be sufficient in some cases to establish guilt beyond a reasonable doubt. See State v. Dumaine, 534 So.2d 32 (La.App. 4th Cir.1988), cert. granted on other grounds, 541 So.2d 880 (La.1989). However in this case, the only evidence which identifies this defendant as the one who committed the offense comes from an eleven year old child who acknowledged on redirect examination by the state that at best, he saw a white person fire the weapon who could have been the defendant, and the testimony of a bystander who admitted to having consumed an exorbitant amount of alcohol before the incident. That testimony standing alone contributes substantially toward a reasonable doubt in any rational fact finder's mind. When that evidence is combined with the contradictory testimony of the other witnesses and viewed in the light most favorable to the prosecution, we are constrained to hold that the essential elements of the crime were not proven beyond a reasonable doubt.

DISPOSITION
In summary, after viewing the evidence in a light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
For the reasons assigned the judgment of the trial court is reversed.
REVERSED.
NOTES
[*] Honorable Lucien Bertrand, Jr. participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.