NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**09-1249**

STATE OF LOUISIANA

VERSUS

CAREY VALLIER, JR.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 04-K-4782-A
HONORABLE JAMES PAUL DOHERTY. JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ELIZABETH A. PICKETT
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

**CONVICTION AFFIRMED; SENTENCED VACATED;
REMANDED FOR RESENTENCING.**

**Earl B. Taylor**
**District Attorney, 27th Judicial District Court**
**Jennifer Ardoin**
**Assistant District Attorney**
**P. O. Drawer 1968**
**Opelousas, LA 70571-1968**
**(337) 948-3051**
**Counsel for State-Appellee:**
**State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**Counsel for Defendant-Appellant:**
**Carey Vallier, Jr.**

**PICKETT, Judge.**

## FACTS

On January 7, 2005, the district attorney of St. Landry Parish filed a bill of information charging the defendant, Carey Vallier, Jr., with armed robbery, a violation of La.R.S. 14:64. A jury was seated on May 10, 2005, but the court granted a mistrial and the jury was dismissed on May 17. On January 10, 2006, the defendant waived a jury trial. The court conducted a bench trial on January 19, 2006 and found him guilty as charged. On June 26, 2006, the defendant filed a motion for new trial, which was not heard.

On August 4, 2006, the court sentenced the defendant to fifteen years at hard labor, ten years without benefit of parole, probation, or suspension of sentence. The defendant immediately made an oral motion to reconsider, and followed up by filing a written motion to reconsider on September 7, 2006, which the court denied.

Subsequently, the defendant filed a number of *pro se* motions. On January 8, 2009, the trial court held a hearing on the defendant's application for post-conviction relief. At that time, the trial court realized that it had never ruled on the motion for new trial.

The trial court heard the motion for new trial on May 7, 2009, and it took the matter under advisement. It issued a written denial on July 14. On September 3, the court re-sentenced the defendant to fifteen years at hard labor, the first ten without benefit of parole, probation, or suspension of sentence.

The defendant now appeals, assigning five errors.

1

## ASSIGNMENTS OF ERROR

1) The evidence introduced at the trial of this case was insufficient to find Carey Vallier, Jr. guilty beyond a reasonable doubt of the armed robbery of Charitie Satchell.

2) The trial court erred in denying the Motion for New Trial.

3) The sentence imposed at the resentencing in this case is illegal.

4) Trial counsel rendered ineffective assistance of counsel in this case in not eliciting testimony to challenge the tainted identification by the store clerk, in not assuring a hearing on the Motion for New Trial within a reasonable time and before the imposition of sentence and in failing to assure that the Motion for New Trial was sufficient.

5) The trial court failed to ascertain that the waiver of a trial by jury was freely and knowingly made by Carey Vallier, Jr.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there is one error patent which is a raised error discussed in assignment of error number three.

## ASSIGNMENT OF ERRORS NUMBERS ONE AND TWO

The defendant combines his first two assignments of error in his brief, because his arguments are closely related. In his first assignment, the defendant argues the evidence was insufficient to support his conviction. In his second, he argues the trial court erred by denying his Motion for New Trial.

The analysis for such sufficiency claims is well-established:

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983);

*State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Armed robbery is defined by La.R.S. 14:64, which states, in pertinent part, "Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."

The only element the defendant contests is identification; he quotes the following jurisprudence:

[W]hen the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. *State v. Weary*, 03-3067 (La.4/24/06), 931 So.2d 297; *State v. Neal*, 00-0674 (La.6/29/01), 796 So.2d 649. Positive identification by only one witness is sufficient to support a conviction. *Weary*, 03-3067 at p. 18, 931 So.2d at 311; *Neal*, 00-0674 at p. 11, 796 So.2d at 658; *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988). It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. *State v. Bright*, 98-0398, p. 22 (La.4/11/00), 776 So.2d 1134, 1147.

*State v. Hughes*, 05-992, p. 6 (La. 11/29/06), 943 So.2d 1047, 1051. The *Hughes* analysis is subsumed within the *Jackson* analysis, as the ultimate issue is whether the state proved beyond a reasonable doubt the defendant's identity as the robber.

The defendant notes that the victim, Ms. Satchell, gave police a general description of the robber, but did not identify him as someone she knew. Later, she recognized the defendant in a newspaper photograph. The defendant argues that there is a substantial likelihood that Satchell misidentified him as the offender.

3

The pertinent colloquy is set forth below:

Q.     As I understand it, Ms. Satchell, you didn't know at the time who had robbed you?

A.     Well, what happened, when I got robbed --

Q.     No, I mean while it's taking place, you don't know who it is?

A.     No, sir.

Q.     Did you come to realize you knew who it was?

A.     Yes, sir.

Q.     And how did that come about?

A.     Well, after -- I was at home after it happened and stuff and I calmed down and everything, I said -- when I was thinking about it, I said, "It seems like that was a familiar person."  And then I said, "I bet you it's that one that, uh, that had got smart with me before."  And I said, "I know that's who it is."  And I said, "Whenever the paper comes out tomorrow," I said, "I'm going to look in the paper and I'm going to see that's who they got 'cause I know that's who it is and if they didn't get him, they don't got [sic] the right guy."

Q.     Did the paper come out the next day?

A.     Yes, sir.

Q.     Did you see it?

A.     It might have been like two days later or something when the paper came out but when I seen him in there, I said, "That's the one."  I said -- And they had two pictures in the paper, and I said -- I pointed out which one.  I said, "That's the one that did it."

Q.     What was it about him that made you recognize -- Well, first of all, you said you had some encounters with him?

A.     Yes, sir.

Q.     How many encounters do you think you had?

A.     A couple, two or three.

As direct examination continued, more details emerged:

4

Q.    What was it that you noticed, what physical -- Was it his voice or was anything physical about him that you recognized when you thought back?

A.    I recognized his voice from those times and his eyebrows --

Q.    What is it about his eyebrows?

A.    -- like his eyes and stuff. Because they were like that.

Q.    Say what you just did because we have –

A.    Well, they have like a point in the middle.

Q.    They're not rounded, they're pointed.

A.    Yeah, they have a high pointy arch --

Q.    A high pointed arch. And you recognized that?

A.    -- in the middle.

Q.    And you recognized him at that time; is that correct?

A.    Yes, sir.

Q.    Do you have any doubt -- You've seen him [in] court today?

A.    Yes.

          MR. RICHARD:   Let the record show you've been pointed [sic] at somebody.

Q.    Who do you see and do you see the person in court –

A.    Yes, sir.

Q.    -- who came in with the gun to the store on November the 4th, 2004?

A.    Yes, sir.

Q.    Would you point to him?
          MR. RICHARD: Let the record show that she points to the defendant.

Q.    Ms. Satchell, is there any doubt in your mind that this is the individual?

5

A.     No, there's no doubt in my mind. If there was, I would not be sitting here pointing the finger at somebody because I don't believe in putting innocent people in -- in jail for something they didn't do but I know beyond a shadow of a doubt that he's the one that robbed me.

On cross-examination, the victim discussed her initial description of the robber's height, as the defendant's trial counsel referred to her 2004 statement:

Q.     Okay. He was [a] black man. How tall are you? It says, "I'm five-two."

A.     I'm five-two.

Q.     And he was a little taller than me. Can you stand up for me?

A.     (Witness complies)

Q.     Did you have shoes on at the time?

A.     Uh-huh.

Q.     Well then, keep them on. Are these the type of shoes you had on at the time?

A.     I don't remember what kind of shoes I had on at the time.

        THE COURT:     I can't hear you. I'm sorry. You'll have to speak up.

A.     I don't remember the kind of shoes that I had on at the time.

Q.     But you're sure that you're five-two?

A.     Yes, ma'am.

Q.     And how tall are the heels that you have on now? About three inches?

A.     (Witness nods)

Q.     And the person that did commit this offense was a few inches taller than you?

A.     Well, I said a few inches but really I don't know because --

Q.     You said a little taller --

6

A.      Yeah.

Q.      -- than me but not much.

A.      Whenever I'm looking at someone like I'm not -- I'm not like -- I don't judge too good in height because my boyfriend's five-eight and I think like he's just an inch taller when I look at him. To me he looks just an inch taller.

Q.      Well, I'm going to stand up beside you and I'm just a little bit taller than you. I'm about five-seven and a half so the person would be just about this much taller than you?

A.      Uh, I don't know.

Q.      You don't know. Well, at the time that you wrote the statement, you said that it was a black man. I'm five-two and he was a little taller than me but not much. I'd say a few inches; is that correct? You wrote that right after it happened, right?

A.      Yes.

Q.      His sweater was big. He looked small, though. He also --

A.      That's the part I was talking about. See, I told you.[1]

The defendant's argument is an attack upon the victim's credibility, and that of corroborating witness Margarita Stevens, who lived across the street from the store that the defendant robbed. Stevens testified that on the date of the crime, she saw someone named Demond Bradley driving with a passenger in the front seat and one in the back. The rear passenger got out with a blue-and-white bandanna around his face. She went into her house and looked out the window. She noticed the car passed through the area again. When she went outside again, the defendant approached her and asked to use the telephone. He had on a gray sweatshirt, and a there was a blue

---

[1] At the motion for new trial hearing on May 7, 2009, Defense counsel stated that Defendant is more than six feet tall. Neither the State nor the court contradicted him on this point.

and white bandanna around his neck. Bradley returned with the car, and they left the area.

The first deputy on the scene asked Stevens if she had seen a person matching the defendant's description, but she said "no." At trial, she explained that she was "very nervous," and "scared" when she talked to the deputy. Later, she made an anonymous telephone call to the police.

Regarding the victim's testimony, the main discrepancies are her failure to identify the defendant on her initial description to police, and her initial description of the robber as "a little taller than me but not much." Further, the defendant argues that the victim's identification of him via his newspaper photograph was very likely to have been a damaging misidentification. He notes that federal jurisprudence has looked unfavorably upon single-photo line-ups, and Louisiana jurisprudence has taken a similar view of "show-up" identifications.

The victim testified she calmed down at home after the robbery, and she realized that she had previously encountered the offender. She used the newspaper merely to confirm that the police had arrested the right person. Thus, her identification of the defendant was independent and not caused by viewing the photograph. Her credibility on this issue, as well as her failure to identify the defendant during her initial contact with police, and her apparently erroneous initial description of his height, were matters for the fact-finder to assess.

> This court will overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way. *See, e.g., State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670, wherein one eyewitness had consumed a large amount of alcohol before the offense and the other was a minor who believed all white men looked alike, and defendant was white.

8

*State v. Hypolite*, 04-1658, p. 5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381.

Also, while delivering its judgment, the trial court remarked that the victim's testimony was "in itself not definitive," and went on to note the corroborating effect of Stevens's testimony. It appears the court carefully considered the evidence and did not simply accept the victim's testimony in whole cloth.

The defendant also questions the credibility of Stevens's testimony. In fact, her credibility was the focus of the motion for new trial. It is also the focus of the defendant's arguments on appeal.

Regarding motions for new trial, the supreme court has explained:

> Under La.Code Crim. Proc. art. 851(3), a court "shall grant a new trial whenever ... [n]ew and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty." *State v. Knapper*, 555 So.2d 1335, 1339 (La.1990). Thus, a new trial shall be granted based on Article 851(3) when: (1) new evidence was discovered after trial; (2) the new evidence is material; (3) the failure to discover the evidence was not due to a lack of diligence on the part of the defense; and (4) had the evidence been introduced, the verdict or judgment of guilty probably would have been changed. *See State v. Cavalier*, 96-3052, 97-0103, p. 3 (La.10/31/97), 701 So.2d 949, 951; *State v. Hammons*, 597 So.2d 990, 994 (La.1992); *Knapper*, 555 So.2d at 1339.

> A ruling on a motion for a new trial rests within the sound discretion of the trial judge. *State v. Quimby*, 419 So.2d 951, 960 (La.1982). In *State v. Talbot*, 408 So.2d 861 (La.1980), we explained the trial judge's obligation as follows:

>> The scope of the trial judge's duty toward the motion for a new trial based upon the new evidence must be kept in mind. It was not for him to determine the guilt of [another alleged suspect] or the innocence of [the defendant]; it was not for him to weigh the new evidence as though he were a jury, determining what is true and what is false. The judge's duty was the very narrow one of ascertaining whether there was new material fit for a new jury's judgment. If so, will

9

honest minds, capable of dealing with evidence, probably reach a different conclusion, because of the new evidence, from that of the first jury? Do the new facts raise debatable issues? Will another jury, conscious of its oath and conscientiously obedient to it, probably reach a verdict contrary to the one that was reached on a record wholly different from the present, in view of evidence recently discovered and not adducible by the defense at the time of the original trial?

*Talbot*, 408 So.2d at 885.

More recently, in *State v. Watts*, 00-602 (La. 1/14/03), 835 So.2d 441, we quoted the above passage with approval and added:

The test is objective in that the trial judge does not sit as the ultimate arbiter of the resolution of the case once the new evidence is considered, that is, the trial court does not weigh the evidence. The role of the trial court is to review the evidence constituting the State's case, not to determine the sufficiency of the evidence, but to evaluate the effect of the newly discovered evidence.

*Watts*, 00-0602, p. 7, 835 So.2d at 447 (footnote omitted) (citing *State v. Hammons*, 597 So.2d at 998).

*State v. Coleman*, 05-1617, pp. 5-6 (La. 6/29/07), 959 So.2d 465, 468-69.

Specifically, the motion for new trial alleged that Stevens made a false statement under oath. The defendant attached an affidavit by a Eunice police officer stating that Stevens had provided him with the telephone number of one of the possible accomplices, Demond Bradley. At trial, she denied knowing the number.

The defendant argued an entirely different basis for the motion when the court finally heard it on May 7, 2009. However, in its reasons for judgment, the trial court considered the argument in the motion. As the trial court addressed the merits of the claim, we will follow suit. The court noted that the officer, Lieutenant Varden Guillory, Sr., was not called to testify at the hearing, and there was no showing of when Stevens obtained Bradley's cell phone number. Also, language cited by the

10

court shows that during her testimony, Stevens acknowledged knowing Demond Bradley "pretty well."

The court refuted the claim in the written motion that Stevens provided "the only testimony that place[d] a weapon at the scene." The victim's testimony placed a weapon at the scene. The defendant now argues the court erred because Stevens testified she never saw the defendant holding a weapon. We note, however, that it was the *defendant's own motion* that made the claim that *Stevens's testimony* placed a weapon at the scene.

The defendant also takes issue with the court's statement that "black type sweat pants and a gray sweatshirt were recovered from the defendant's home." At trial, Detective Ivory Chevis, Jr. gave the following testimony during cross-examination:

Q.     Is this what was stated to you what you've discovered as a result of your investigation?

A.     Yes, well, when I initially talked to the victim.

Q.     Now, did you find a gray hooded sweatshirt anywhere?

A.     I found what I thought may could have been the object. It was the what I say was brown but the inside, if you turn it inside out, it would appear to be a gray sweatshirt and I just collected that evidence because the victim stated one thing. She was really nervous so I wanted to make sure I collected evidence that may have been used in [what] I thought was the crime.

Q.     Did you find any black sweat pants?

A.     I didn't find any black sweat pants. I found some black pants in the area -- in the same area with the black shoes.

Q.     Did you find a blue bandanna with white design?

A.     No, I did not find a blue bandanna, ma'am.

Q.     When you went to Mr. Vallier's home, did you discover any item in the laundry basket?

11

A. What I found was that hooded jacket, what I call a brown with gray inside jacket.

Q. Where did you find it?

A. In the laundry basket. Kind of like in and out of the laundry basket.

Q. So this was something that had appeared to have been there for a while?

A. It was dirty laundry.

Q. And that was all that you located at this home, at Mr. Vallier's home?

A. Yes, ma'am.

Q. Did you find any other shoes in the home of Mr. Vallier?

A. Did I find any other shoes? No, ma'am. Those were the only shoes I found that matched the description we had on the imprint that was left on the ice cream counter machine at the store. The pattern did appear to be what I thought was the same.

Q. Did you check any shoes of any other person?

A. No, ma'am, other than the ones when we brought them in. Mr. Vallier, who had a different pair of shoes on at that time but I was told by his mother that he had changed clothes earlier that day, earlier that evening.

While it is questionable how much support these items of clothing added to the state's case, the testimonies of the victim and Stevens were sufficient to prove the state's case beyond a reasonable doubt. Further, the defendant failed to present evidence or argument that would have led to a different verdict, pursuant to *Coleman*.

The court's reasons for ruling on the motion for new trial demonstrate it was well aware of the credibility-related issues in the case. For the reasons discussed, these assignments lack merit.

12

# ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, the defendant argues his sentence is illegally lenient, and asks that it be vacated, and the case remanded for resentencing. He also asks for the resentencing to be conducted by a different judge. The state agrees that the sentence is illegally lenient, but asks the court to take no action. In the alternative, it asks that the case be remanded for resentencing.

As both parties observe, the sentence for armed robbery is not less than ten years but not more than ninety-nine years, all without benefit of parole, probation, or suspension of sentence. La.R.S. 14:64. In the present case, the trial court sentenced the defendant to fifteen years at hard labor, with only the first ten years designated as being without benefits.

The defendant cites an analogous case from the second circuit:

> The trial court imposed a sentence of 50 years at hard labor, with only 5 years of which to be served without benefit of parole, probation, or suspension of sentence. This sentence is in error because the statute mandates that the entire sentence must be served without benefits.

> If the trial court is silent about the statutory restrictions on the sentence, the statute mandates that the Department of Corrections apply the restrictions, and the error is self-correcting. However, if there is discretion about what portion of any sentence may or may not be subject to restriction, the trial court has to exercise that discretion.

> We find that the sentence imposed is not self correcting. The controlling statutory authority for self-correction of an erroneous sentence is found in La. R.S. 15:301.1, which provides:

> . . . .

> This article has been interpreted by the Louisiana Supreme Court in *State v. Williams*, 2000-1725 (La.11/28/01), 800 So.2d 790 as follows:

> > Paragraph A of La. R.S. 15:301.1 addresses those instances where sentences contain statutory restrictions on parole, probation or suspension of sentence. See e.g.: La. R.S. 14:64 (armed robbery); La. R.S. 15:529.1(A)(2)(b)(ii) (third

13

felony offenders convicted of a crime of violence); La. R.S. 14:44 (aggravated kidnapping); or those with specified, but limited, restrictions on the eligibility for parole, probation and suspension of sentence (La. R.S. 14:51) (aggravated arson, "[t]wo years of such imprisonment at hard labor shall be without benefit of parole, probation, or suspension of sentence."); La. R.S. 14:98(D)(1)(operating a vehicle while intoxicated, third offense, "[a]t least six months of the sentence of imprisonment imposed shall be without benefit of probation, parole, or suspension of sentence."). In instances where these restrictions are not recited at sentencing, La. R.S. 15:301.1(A) deems that those required statutory restrictions are contained in the sentence, whether or not imposed by the sentencing court. Additionally, this paragraph self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute.

*Williams*, at 798-99.

In the instant case, the trial court did not fail to pronounce the restriction, but it erred in imposing a sentence that only applied the statutory restriction of "without benefits" to a portion of the sentence. This error does not fall into the "failure to apply--self correcting" category. We cannot determine whether the trial court would have imposed a 50 year sentence had it understood that the entire sentence was to be served without benefits. Therefore, we decline the opportunity to step into the province of the discretion of the trial court as it relates to the sentence to be imposed in this instance. Consequently, we reverse the sentence and remand this matter to the trial court for re-sentencing.

*State v. Williams*, 38,878, pp. 4-6 (La.App. 2 Cir. 10/29/04), 888 So.2d 971, 974-75.

Similarly, in a sexual battery case, this court stated:

The trial court suspended a portion of the Defendant's sentence pursuant to his guilty plea on the charge of sexual battery which is prohibited by the sexual battery statute. The trial judge sentenced the Defendant to imprisonment at hard labor for ten years and "suspend[ed] all but seven (7) years of that sentence and order[ed] that [the Defendant] serve the remainder without benefit of parole, probation, or suspension of sentence." The penalty provision for sexual battery provides for imprisonment with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years. La.R.S. 14:43.1.

In *State v. Normand*, 04-840 (La.App. 3 Cir. 12/15/04), 896 So.2d 98, *writ denied*, 05-231 (La.5/6/05), 901 So.2d 1094, the trial court imposed a seven-year sentence, suspended three years of that sentence, and placed the defendant on supervised probation for an offense which required a sentence of no more than ten years without benefit of probation, parole, or suspension of sentence. This court recognized the error, vacated the defendant's sentence, and remanded for resentencing.

In the present case, since the trial court suspended a portion of the Defendant's sentence in contravention of the sentencing provisions of the sexual battery statute, we find that the trial court imposed an illegally lenient sentence. Consequently, we vacate the Defendant's sentence and remand the case to the trial court for resentencing. Because we vacate the Defendant's sentence and remand the case for resentencing, we pretermit addressing the Defendant's claim of excessive sentence.

*State v. Guidry*, 08-1574, pp. 2-3 (La.App. 3 Cir. 6/3/09), 11 So.3d 728, 29.

In light of *Williams* and *Guidry*, this court vacates the sentence and remands the case for resentencing. The defendant also requests that the case be assigned to a different district judge, however, he cites no legal authority for doing so. He alleges that both the sentence at issue and the original sentence were illegal, but he does not allege any bias on the trial court's part. Thus, the request for a different judge is denied.

**ASSIGNMENT OF ERROR NUMBER FOUR**

In this assignment, the defendant argues his trial counsel was ineffective for failing to effectively challenge the victim's identification of him as the robber, failing to assure a complete record, and failing to obtain timely review of the motion for new trial and to fully set forth the relevant issue in said motion.

The analysis for such claims is well-established, as this court has explained:

Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. *State v. Prudholm*, 446 So.2d 729 (La.1984); *State v. Johnson*, 557 So.2d 1030 (La.App. 4 Cir.1990); *State v. Reed*, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the

15

merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. *State v. Seiss*, 428 So.2d 444 (La.1983); *State v. Ratcliff*, 416 So.2d 528 (La.1982); *State v. Garland*, 482 So.2d 133 (La.App. 4 Cir.1986); *State v. Landry*, 499 So.2d 1320 (La.App. 4 Cir.1986).

The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Fuller*, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland*, *supra*, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, *supra*, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. *State v. Sparrow*, 612 So.2d 191, 199 (La.App. 4 Cir.1992).

This Court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." *State v. Bienemy*, 483 So.2d 1105 (La.App. 4 Cir.1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." *State v. Brooks*, 505 So.2d 714, 724 (La.1987).

*State v. Schexnaider*, 03-144, p. 18 (La.App. 3 Cir. 6/4/03) 852 So.2d 450, 462

(quoting *State v. Griffin*, 02-1703, pp. 8-10 (La.App. 4 Cir. 1/15/03), 838 So.2d 34, 40).

The record is sufficient to address the defendant's arguments. First of all, he alleges that trial counsel should have made an effort establish his size for the record, since the five-foot two-inch victim initially told police the robber was not much taller than her. Earlier in this opinion, however, we took account of subsequent counsel's

16

uncontradicted assertion that the defendant is more than six feet tall. In addition, his size was surely apparent in open court, and counsel cross-examined the victim regarding her initial report of the robber's height.

Although it may have been the better practice for trial counsel to have the defendant's exact height and weight noted in the record, the defendant has suffered no prejudice on appeal. This court was able to fully address the identification issue earlier in the opinion. Thus, his argument does not meet the second prong of *Strickland*.

His next argument is that trial counsel should have acted to attain a timely hearing for his motion for new trial. He notes that the hearing did not take place until nearly three years after the motion was filed. He suggests the passage of time prejudiced his case because the trial judge did not remember details by the time it conducted the hearing on the Motion for New Trial on May 7, 2009. Also, the defendant argues that counsel failed to make sufficiently detailed arguments in the written motion. The defendant's counsel at the hearing introduced the transcript of the trial evidence, and the court took the matter under advisement.

Further, the court stated it would read the transcript. The written reasons for ruling, issued on July 14, 2009, indicate that the court reviewed the record before making its ruling. For example, it included colloquies from the testimonies of both Satchell and Stevens. Thus, it is clear the trial judge did not rely upon his own memory to make his ruling, so that the defendant was not prejudiced by the delay in hearing the motion. Leaving aside the first prong of *Strickland*, it is clear this argument would not satisfy the second.

17

The defendant also contends counsel's arguments should have been more detailed, as greater specificity would have increased his chances of obtaining a favorable ruling on his Motion for New Trial. However, we observe that his present argument does not state or suggest any specific issues or details that counsel below should have raised. Thus, this portion of the defendant's assignment satisfies neither prong of *Strickland*.

For the reasons discussed, this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER FIVE

In his final assignment of error, the defendant argues the trial court failed to assure that his waiver of a jury trial was voluntary.

> Louisiana Code of Criminal Procedure article 780(A) provides in pertinent part that "[a] defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge." Additionally, a defendant, with the permission of the trial judge, "may exercise his right to waive trial by jury at any time prior to the commencement of trial." La.Code Crim.P. art. 780(B). While the trial judge must determine if the defendant's jury trial waiver is knowing and intelligent, that determination does not require a *Boykin*-like colloquy. *See State v. Frank*, 549 So.2d 401 (La.App. 3 Cir.1989).

> > As in the case of other significant rights, waiver of trial by jury is valid only if the defendant acted voluntarily and knowingly. *State v. Kahey*, 436 So.2d 475, 486 (La.1983); *State v. Wilson*, 437 So.2d 272, 275 (La.1983). While the Louisiana Supreme Court has rejected an absolute rule which would require the trial judge to personally inform the defendant of his right to a jury trial, *Kahey, supra*; *State v. Moya*, 539 So.2d 756, 758 (La.App. 3d Cir.1989), the preferred method of ensuring the right is for the trial judge to advise the defendant personally on the record of his right to a jury trial and to require the defendant to waive the right personally either in writing or by oral statement in open court on the record. *State v. Wilson*, 437 So.2d at 275; *State v. Jones*, 537 So.2d 1244, 1247 (La.App. 4th Cir.1989); *State v. Moya*, 539 So.2d at 758.

18

*State v. Abbott*, 92-2731, pp. 3-4 (La.App. 4 Cir. 2/25/94), 634 So.2d 911, 913-914.

*State v. Bell*, 04-1183, pp. 2-3 (La.App. 3 Cir. 3/2/05), 896 So.2d 1236, 1238, *writ denied*, 05-828 (La. 11/28/05), 916 So.2d 143.

In the present case, the colloquy regarding the waiver occurred on January 10, 2006:

> THE COURT: Let the record reflect that the State is represented by Mr. Richard. The defendant, Mr. Vallier, is present in court with Ms. Malbrough, his court appointed attorney. What's your pleasure?
>
> MS. MALBROUGH:    You Honor, we'd like to waive jury, our right to a jury at this time.
>
> BY THE COURT:
>
> Q.    Mr. Vallier, under our laws and the Constitution, you have a right to have your case heard by a jury of your peers. You also have a right to waive that jury.  Have you discussed this with your attorney, Ms. Malbrough?
>
> CAREY VALLIER, JR.:
>
> A.    Yes, sir.
>
> Q.    And have you had questions about the affect and what would happen if you waive your right to have your case heard by the jury?
>
> A.    Yes, sir, Your Honor.
>
> Q.    Have you had an opportunity and those questions, have they been answered to your satisfaction?
>
> A.    Yes, sir.
>
> Q.    And with all that's gone on, do you still wish to waive your right to a trial by jury?
>
> A.    Yes, sir.
>
> Q.    Is it your desire that your case be presented to me for a determination and I'll be the sole judge in this case?
>
> A.    Yes, sir.

THE COURT: All right. Let the record reflect that the Court is satisfied that Mr. Vallier has knowingly, voluntarily and intelligently waived his right to be tried by a jury in this matter.

MS. MALBROUGH: Thank you, Your Honor.

Considering the parameters discussed in *Roberts*, we find the waiver at issue was valid. The defendant's waiver was explicit, and he advised the court that he had fully discussed the matter with counsel. Further, as the state observes, the defendant had been through the jury selection process in the prior trial, which ended in mistrial.

For the reasons discussed, this assignment lacks merit.

## <u>CONCLUSION</u>

The defendant's conviction is affirmed. However, the sentence is vacated, and the case is remanded for resentencing.

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3, Uniform Rules, Courts of Appeal.