# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-504


STATE OF LOUISIANA

VERSUS

CHARLES C. KEENE

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 15-1225
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, D. Kent Savoie, and Van H. Kyzar, Judges.


**CONVICTIONS AFFIRMED. SENTENCES VACATED. REMANDED FOR RESENTENCING.**


**J. Reed Walters**
**District Attorney**
**Steven P. Kendrick**
**Assistant District Attorney**
**Post Office Box 1940**
**Jena, LA 71342**
**(318) 992-8282**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Katherine M. Franks**
**Louisiana Appellate Project**
**Post Office Box 1677**
**Abita Springs, LA 70420-1677**
**(225) 485-0076**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Charles C. Keene**

**AMY, Judge.**

The State alleged that a confidential informant purchased prescription pain pills from the defendant. The State charged the defendant with distribution of hydrocodone in combination with a non-narcotic ingredient, a violation of La.R.S. 40:968(A)(1) and La.R.S. 40:964(D)(1)(d) (Schedule III), and with conspiracy to distribute hydrocodone in combination with a non-narcotic ingredient, a violation of La.R.S. 14:26, La.R.S. 40:968(A)(1), and La.R.S. 40:964(D)(1)(d) (Schedule III). A jury found the defendant guilty of both charges. The trial court sentenced the defendant to twenty-five years at hard labor for the distribution charge and to thirteen years at hard labor for the conspiracy charge, with the sentences to run concurrently. The defendant appeals. For the following reasons, we affirm the defendant's conviction, vacate the defendant's sentences, and remand for resentencing.

**Factual and Procedural Background**

According to Detective Brant King's testimony in this matter, Ms. Charty Berry began acting as a confidential informant for the Narcotic Division of the LaSalle Parish Sheriff's Office in October 2014 at which time "she wanted help for a driving under suspension. A contempt charge." In describing the arrangement in which Ms. Berry would perform narcotics purchases for the detectives, Detective King explained that it was agreed that "[the detectives] would try to help her and if she made cases[,]" then they "would pay her one hundred dollars per case." Detective King explained that Ms. Berry occasionally received money for gasoline too.

Detective King explained that as of January 18, 2015, he "had heard [Charles Keene's] name[,]" but was not conducting an ongoing investigation into Mr. Keene at that time. However, on that day, Ms. Berry "notified [Detective King] of being able to purchase…prescription pain pills from Mr. Keene." Ms. Berry recalled that she "had talked to [the defendant's] wife earlier that day" about the purchase. Detective King testified that, on the same day, he and Detective Tracy Clark provided Ms. Berry

with "a covert audio/video camera along with twenty dollars in official funds for the purchase of the…suspected…prescription pills" by placing the items in Ms. Berry's mailbox at 5:28 p.m. Detective King said that the "covert audio/video camera" was disguised as "a [wrist]watch." Detective King testified that he and Detective Clark then "went to a remote location" so that they "wouldn't be seen…during the transaction."

Ms. Berry explained that after the detectives left, she retrieved the items from the mailbox, put the watch on her wrist, and walked to the Keenes' residence, recording the events with the wristwatch as she went. Ms. Berry testified that initially Mr. Keene said he did not have any pills to give her, but eventually "he went in the house and he got some and brought the pill bottle back out." Ms. Berry testified that she then walked back home and "put the…camera and the pills in the mailbox." Regarding the pills that she put in the mailbox, Ms. Berry clarified that she "got them from [Mr. Keene]."

Detective King said that Ms. Berry contacted him again at approximately 6:11 p.m., and the detectives met with Ms. Berry around 6:15 p.m. Detective King testified that upon arriving, the detectives discovered that Ms. Berry had placed "two suspected hydrocodone pills and the covert audio/video camera" in her mailbox for the detectives to retrieve. Detective King explained that Ms. Berry then met the detectives at the mailbox, and they discussed what had occurred. Detective King testified that he then took the camera and suspected hydrocodone pills into custody.

On August 20, 2015, the State filed a bill of information charging the defendant, Charles C. Keene, with one count "of Distribution of CDS III – Hydrocodone in combination with a Non-Narcotic Ingredient" in violation of La.R.S. 40:964(D)(1)(d) [1] and 40:968(A)(1). The bill of information also charged the defendant with one count of conspiracy "to Distribute CDS III-Hydrocodone in

---

[1] This statute was repealed effective June 23, 2015, at which point hydrocodone became a Schedule II drug in all of its forms.

combination with non-narcotic ingredient" in violation of La.R.S. 14:26, 40:964(D)(1)(d), and 40:968(A)(1). The defendant entered a plea of not guilty to both charges. On January 24, 2017, a jury found the defendant guilty as charged. Thereafter, the trial court sentenced the defendant to twenty-five years at hard labor for the distribution charge and thirteen years at hard labor for the conspiracy charge. The trial court ordered that the sentences run concurrently. At the sentencing hearing, the defense attorney orally objected to the sentence as excessive.

The defendant appeals, asserting as error that:

1.  The evidence is insufficient to establish that Charles Keene distributed hydrocodone.

2.  The sentences the trial judge imposed are unconstitutionally excessive and illegal.

3.  Counsel was ineffective at the sentencing proceeding in failing to object to the illegal sentences as such and in failing to file a Motion to Reconsider Sentence for each count. But for trial counsel's ineffectiveness, the result of the sentencing proceeding would have been different.

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent. An error patent is one which is "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La.Code Crim.P. art. 920(2). On review, we note an error patent with regard to the sentences that the trial court imposed insofar as the sentences exceed the penalties authorized by law.

As stated above, the trial court sentenced the defendant to twenty-five years for the distribution charge and to thirteen years for the conspiracy charge. As conceded by the State in its brief to this court and as pointed out by the defendant in his assigned errors, the trial court appears to have sentenced the defendant using the sentencing provision for a Schedule II drug. However, at the time of the incident at issue here, La.R.S. 40:964 listed hydrocodone in combination with a non-narcotic

3

agent as a Schedule III drug. Moreover, the bill of information charged the defendant with conspiracy to distribute and distribution of "CDS III – Hydrocodone in combination with a Non-Narcotic Ingredient[,]" a violation of La.R.S. 40:964 Schedule III (D)(1)(d) and 40:968(A)(1) as well as La.R.S. 14:26. At both the beginning of the trial and in closing instructions, the trial court read these same charges to the jury. The jury returned verdicts of guilty as charged. Therefore, considering the charging instrument, the opening and closing instructions given to the jury, and the verdicts returned by the jury, we find that the defendant was charged with, and found guilty of, the distribution of and the conspiracy to distribute hydrocodone as defined in Schedule III.

For distribution of hydrocodone, Schedule III, the maximum sentence to which the defendant could have been sentenced is ten years at hard labor and a fine of not more than fifteen thousand dollars. La.R.S. 40:968(B). For conspiracy to distribute hydrocodone, Schedule III, the maximum sentence to which the defendant could have been sentenced is five years at hard labor and a fine of not more than seven thousand five hundred dollars. La.R.S. 14:26; La.R.S. 40:968(B). As is the situation here, when correction of a sentence involves the exercise of sentencing discretion, the case must be remanded to the trial court. *State v. Fraser*, 484 So.2d 122 (La.1986). Thus, we vacate the sentences and remand the case to the trial court for resentencing in accordance with the provisions applicable to Schedule III.

*Sufficiency of the Evidence*

In his first assignment of error, the defendant asserts that the evidence presented at trial was insufficient to support the conviction for distribution of hydrocodone. Specifically, the defendant questions whether Ms. Berry was a credible witness and whether "the audio / video made in the dark reflect[s] a drug transaction[.]"

The standard of review for analysis of an insufficient evidence claim is found in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979) (alteration in

original), in which the Supreme Court explained that: "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.*" *See also State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367. In discussing the standard, the Louisiana Supreme Court has cautioned: "A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses." *State v. Macon*, 06-0481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285. Application of the *Jackson* standard "does not permit a reviewing court to substitute its own appreciation of the evidence for that of the fact finder or to second guess the credibility determinations of the fact finder[.]" *State v. Calloway*, 07-2306, p. 10 (La. 1/21/09), 1 So.3d 417, 422.

In pertinent part, La.R.S. 40:968 discusses the illegality of distribution of a controlled dangerous substance and the penalties for such:

> **A. Manufacture; distribution.** Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:
>
> (1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule III;
>
> . . . .
>
> **B. Penalties for violation of Subsection A.** Any person who violates Subsection A with respect to any controlled dangerous substance classified in Schedule III shall be sentenced to a term of imprisonment at hard labor for not more than ten years; and, in addition, may be sentenced to pay a fine of not more than fifteen thousand dollars.

The elements of the crime of distribution of a controlled dangerous substance are delivery or physical transfer of the subject substance; guilty knowledge of the substance at the time of delivery or transfer; and the exact identity of the substance. *State v. Nixon*, 51,319 (La.App. 2 Cir. 5/19/17), 222 So.3d 123. *See also State v. Anderson*, 29,282 (La.App. 2 Cir. 6/18/97), 697 So.2d 651.

5

<u>Delivery</u>

The defendant primarily questions whether the record reflects that the State proved delivery or physical transfer of the purported contraband beyond a reasonable doubt. Concerning this element, the defendant specifically argues that the evidence the State produced "should not be sufficient to constitute proof beyond a reasonable doubt to sustain a conviction" because Ms. Berry is "[a]n incredible witness" and the recording "depicts a discussion about pills but no transaction[.]"

As seen by the above quote, the defendant's argument with regard to Ms. Berry is based, at least in part, on Ms. Berry's credibility as a witness. Significantly, a reviewing court is not to second guess the fact finder's rational credibility determinations. *State v. Kelly*, 15-0484 (La. 6/29/16), 195 So.3d 449. Therefore, this court has explained that it will not overturn the fact finder's credibility assessment unless the witness's perception was impaired as evidenced by contradictions or discrepancies within the witness's testimony and compared to the other evidence presented. *State v. Hypolite*, 04-1658 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, *writ denied*, 06-0618 (La. 9/22/06), 937 So.2d 381; *State v. Bourque*, 94-0291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670. For example, in *Hypolite*, 903 So.2d 1275, even though the witness testified that she had consumed two twenty-two ounce beers earlier in the evening, a panel of this court found that the jury was not unreasonable in crediting the witness's testimony. The panel explained that "[t]he testimony did not indicate that [the witness] was intoxicated, or otherwise unable to objectively perceive events," and other evidence actually bolstered the witness's credibility regarding the incident. *Id.* at 1279.

Similarly, although Ms. Berry testified that on January 18, 2015, she had used methamphetamine "prior on that day" and "might have" taken pills "earlier that day[,]" we conclude that the jury was not unreasonable in crediting Ms. Berry's testimony that delivery occurred. Rather, the jury was able to hear the conversation

6

from the audio recording in consideration of whether Ms. Berry was seemingly "intoxicated, or otherwise unable to objectively perceive events[.]" *Hypolite*, 903 So.2d at 1279. Additionally, the jury heard other testimony and evidence that supported Ms. Berry's version of the events. For example, Detective King testified that he listened to and viewed the audio/video that was obtained from the covert camera, and he answered affirmatively when asked whether Ms. Berry's version of the events is consistent with the contents of the recording.

Additionally, and although the defendant argues that the recording is insufficient because it failed to capture delivery, we conclude that any rational juror could have concluded beyond a reasonable doubt that the defendant delivered two pills to Ms. Berry based on the evidence. Alongside Ms. Berry's testimony, the State played the recording obtained from the covert camera and allowed Ms. Berry to explain the recording. As described by Ms. Berry, the excerpts of the conversation between Ms. Berry, the defendant, and the defendant's wife concern narcotics generally and pain pills specifically.

For example, Ms. Berry confirmed that, at one point, she can be heard asking whether the defendant had pills "on pocket[,]" which she clarified is slang for having narcotics on one's physical person. Ms. Berry verified that thereafter, the defendant is heard discussing "the medicine [he] can get from [his] kin folk and" that "they want ten dollars a pill." Ms. Berry explained that subsequently on the recording, the defendant can be heard talking on the telephone because "[h]e was trying to get some pills." Ms. Berry corroborated that the recording then captures the defendant explaining why he did not have any pills on hand to sell to her but thereafter can be heard "more or less convincing his self [sic] that [he was] going to give [her] two of his pain pills" and then "replace them with the money." Although the recording did not visually capture it, Ms. Berry testified that "[the defendant] went in the house and he got some and brought the pill bottle back out." After that, Ms. Berry confirmed

7

that she can be heard saying the defendant is "an all right fellow" and that she "[does not] care what anybody says about him" because "he just gave [her] the two pain pills." Ms. Berry corroborated that she can be heard saying to the defendant, "here you can take the bottle back" after she "emptied [the pills] in [her] hand[.]" Ms. Berry verified that the defendant's wife can then be heard, referring to the pills, saying, "you got two, right?"

Viewing the evidence in the light most favorable to the prosecution and upon consideration of both Ms. Berry's testimony and the recording presented by the State, we find that any rational finder of fact could have concluded beyond a reasonable doubt that delivery or physical transfer occurred.

Guilty knowledge of the substance at the time of delivery

Next, we consider whether the record reflects that the State proved guilty knowledge of the substance at the time of delivery beyond a reasonable doubt. As discussed in the previous section, the record contains a recording of the purported transaction and surrounding conversation, a portion of which pertained to narcotics and pain pills. Ms. Berry also testified extensively regarding the discussion. Having viewed the evidence in the light most favorable to the prosecution, we find that any rational finder of fact could have concluded beyond a reasonable doubt that the defendant had guilty knowledge of the substance at the time of the transfer.

The exact identity of the substance

Last, we consider whether the State proved the exact identity of the substance beyond a reasonable doubt. In this regard, the State presented testimony from Miley Duplechain, who was previously a forensic chemist for the North Louisiana Criminalistics Laboratory. Ms. Duplechain testified that, in that capacity, she "conducted a physical examination of [the] tablets to, their markings, their size, their shape, consistency. Recorded that. And then identified them to be hydrocodone tablets with acetaminophen." Specifically, Ms. Duplechain explained that she

8

compared the pills to the "Drug Identification Bible[,]" which "gives a table of all of the possible combinations of markings, their manufacturer, their color, their shape" and "images, in color, of all of the tablets…scaled to exact size and exact font and exact description of that pill."

Ms. Duplechain explained that physical examinations are a generally accepted practice in laboratories as well as in other fields, such as pharmacy and nursing. Ms. Duplechain testified that if she would have "had any cause to suspect" that the pills were counterfeit, she would have performed a chemical analysis to confirm the identity of the pills. Thus, as with the first two elements, a review of the record reveals support for the jury's conclusion.

The State satisfied its burden of proving the identity of the controlled dangerous substance beyond a reasonable doubt. Accordingly, we affirm the defendant's conviction for distribution.

*Excessive Sentence and Ineffective Assistance of Counsel*

The defendant's remaining two assignments of error, which allege that the trial court imposed unconstitutionally excessive and illegal sentences and that defense counsel was ineffective for failing to object to said sentences, are moot given this court's vacating of the defendant's sentences and the attendant remand for resentencing.

## DECREE

For the foregoing reasons, the conviction of the defendant, Charles C. Keene, is affirmed. The sentences are vacated and the case is remanded for resentencing.

**CONVICTIONS AFFIRMED. SENTENCES VACATED. REMANDED FOR RESENTENCING.**